STATE of Missouri, ex rel., Lynda FOSTER, Relator/Respondent,

v.

Elizabeth MORRIS, Jean V. Wolford, Richard L. Stevens, and Sharon Sholts, Respondents/Appellants.

No. 68340.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 19, 1995.

Frank Susman, Clayton, for appellants.

Raymond A. Bruntrager, St. Louis, for respondent.

GRIMM, Judge.

The Board of Trustees for the Village of Riverview expelled one of its trustees, relator Lynda Foster. Pursuant to Chapter 536, RSMo 1994, relator sought judicial review in the circuit court. That court reversed the Board and reinstated relator.

The Board appeals. We review the Board's decision and not the circuit court's judgment. *Hall v. Wolf,* 710 S.W.2d 302, 304 (Mo.App.E.D.1986). We affirm the circuit court's judgment and reverse the Board's decision to expel trustee.[1]

### I. Background

Relator's problems with the Board began before she was elected a trustee. On December 29, 1993, she filed suit against the Village of Riverview and one of its trustees. In that petition, she alleged the defendants violated the Missouri Sunshine Law. Also, she alleged false arrest and sought money damages, including $50,000 punitive damages.

In April, 1994, while the above suit was pending, relator was elected to a two-year term as trustee. Her tenure on the Board, putting it mildly, has been tumultuous. Al-

1. Respondent filed a Motion to Dismiss this appeal for the Board's failure to comply with Rule 84.04. The motion is denied.

though there are numerous examples, we mention only two.

Relator refused to turn in keys to the village hall, despite a duly adopted Board policy requiring her, and other trustees, to do so. Relator said she "threw the keys away." The Board's chair had the locks changed because of her concern that someone might use the discarded keys to either steal or vandalize equipment. Later, relator acknowledged that she "lied."

Another example involves relator's litigation against the village and a trustee. Originally, relator indicated a willingness to allow the other trustees to discuss her litigation outside her presence. However, when the need to do this arose, relator said, "No, I am not willing to leave," and would not leave the meeting.

On July 28, the Board adopted a "Resolution of Expulsion Proceedings." The resolution was amended and readopted on August 9. The resolution set forth five grounds, including the problems involving the keys and relator's refusal to leave a closed meeting concerning her litigation. Following a hearing on September 6, the Board issued findings of facts, conclusions of law, and a decision expelling relator. All four of the other Board members signed this decision.

## II. Applicability of § 80.080 [2]

■ We do not reach the Board's two points attacking the trial court's judgment. Rather, our disposition is controlled by relator's argument, first raised at the Board hearing, that § 80.080 "does not authorize permanent expulsion hearings and at best applies only to the temporary expulsion of a member of the board from a given meeting." We agree.

The Board relied on § 80.080 to expel relator. That section provides:

The board of trustees shall judge of the qualifications, elections and returns of their own members; *they may* determine rules of their own proceedings, punish any member or other person for disorderly behavior in their presence, and *with the concurrence of four of the trustees, expel*

*any member,* but not a second time for the same cause; they shall keep a journal of their proceedings, and, at the desire of any member, shall cause the yeas and nays to be taken and entered on the journal, on any question, resolution or ordinance; and their proceedings shall be public. (emphasis added).

The critical language for us to construe states that a board may, "with the concurrence of four of the trustees, expel any member."

■ In construing a statute, the words used are to be considered in their plain and ordinary meaning in order to ascertain the intent of the legislators. *Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992). The provisions of a legislative act must be construed and considered together and, if possible, all provisions must be harmonized and given some meaning. *Id.*

■ Also, related clauses must be considered when construing a particular portion of a statute. *Hagely v. Board of Educ. of Webster Groves,* 841 S.W.2d 663, 667 (Mo. banc 1992). The legislature is presumed not to intend an unreasonable or absurd result but rather a logical one. *David Ranken, Jr. Technical Institute v. Boykins,* 816 S.W.2d 189, 192 (Mo. banc 1991).

In applying these rules, we first note the provisions which precede § 80.080. Section 80.050 sets out the qualifications to be a trustee. The next section, 80.060, requires trustees to take a prescribed oath, to meet and select officers, and to determine a time and place for their regular meetings. Section 80.070 provides that a majority of the trustees constitutes a quorum, and that absent members may be compelled to attend.

The next section is § 80.080, set forth above. When we examine these four sections together, it is clear that they set out a cohesive plan for the organization and function of a village board of trustees. Section 80.080's role in this plan relates to the meetings of the board.

If we dissect § 80.080, the first clause permits the board to judge "the qualifications,

2. All statutory references are to RSMo 1994.

elections and returns of their own members." The second clause permits the board to "determine rules of their own proceedings." The third clause permits the board to "punish any member or other person for disorderly behavior in their presence." Implicitly, all of these actions may be taken by a majority of the trustees.

The fourth clause, which we are required to construe, requires the concurrence of four trustees. This clause permits the other four trustees to "expel any member" for disorderly behavior.

The last two clauses of § 80.080 relate to a board's proceedings. One clause requires the board to "keep a journal of their proceedings," the other requires all "proceedings shall be public."

The Board urges us to construe the fourth clause of § 80.080 to confer jurisdiction on a village board to expel a sitting trustee for the remainder of the trustee's term of office. It points to nearly identical language in Article III of the Missouri Constitution.

Article III establishes the legislative branch. Section 18 concerns the operation of the House and Senate. That section states:

> Each house shall appoint its own officers; shall be sole judge of the qualifications, election and returns of its own members; ... may punish its members for disorderly conduct; and, *with the concurrence of two-thirds of all members elect, may expel a member; but no member shall be expelled a second time for the same cause.* (emphasis added).

The Board relies on *State ex rel. Danforth v. Hickey*, 475 S.W.2d 617 (Mo. banc 1972). *Hickey* was an original proceeding in quo warranto, the object of which was to oust a member of the House of Representatives. The relator's position was that the member had moved from the district from which he was elected. As a result, relator contended the member had vacated his office under the provisions of Article III, § 13 of the Missouri Constitution. *Id.* That article provides that if a legislator moves from the district where elected, the "office shall thereby be vacated."

Representative Hickey filed a motion to dismiss the quo warranto proceedings. He contended that the Missouri Constitution vested exclusive jurisdiction of this issue in the House of Representatives. The supreme court agreed. It concluded, "the universally accepted interpretation of provisions such as Article III, § 18, has been that *state* legislative bodies are given the sole right to determine ... whether the member becomes disqualified during [the member's] period of office and as a result vacates [the member's] office." *Hickey*, 475 S.W.2d at 621. (emphasis added).

*Hickey* is not applicable. In *Hickey*, the sole issue was whether the supreme court had jurisdiction to determine whether a vacancy existed in the office of a member of the House of Representatives. It held that the judicial branch of government, including the supreme court, had no right to determine the facts or to enforce an ouster provision. *Id.* at 618.

Unlike *Hickey*, we are not faced with a constitutional provision which gives a state legislative body exclusive jurisdiction. Rather, we are considering a statutory provision. Further, also unlike *Hickey*, both parties agree that this court has jurisdiction to review the Board's proceedings.

We return to the clause we are asked to construe. The predominant subject of § 80.080 is the conduct of meetings of a board of trustees. We construe the clause, "expel any member," to mean that four trustees may expel any member from a *meeting* for disorderly behavior, "but not a second time for the same cause." Such expulsion is from a single meeting, not for the remaining term of the trustee's term of office.

We do not condone relator's conduct. We simply hold that § 80.080 does not authorize a village board of trustees to permanently oust a trustee for misconduct. In view of this holding, we need not address Board's points that sufficient cause existed to declare relator's position vacant and that she was accorded due process.

The trial court's judgment is affirmed and the Board's expulsion of relator is reversed.

AHRENS, P.J., and PUDLOWSKI, J., concur.